UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| T.Y.,[1] | Case No. 24-cv-06159-PHK |
| Plaintiff, | **ORDER REMANDING CASE** |
| v. | |
| FRANK BISIGNANO,[2] | |
| Defendant. | |

*Pro se* Plaintiff T.Y. ("Plaintiff") brings this action under the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), seeking judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's applications for disability insurance benefits and supplemental security income. [Dkt. 1]. The Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry of final judgment, under 28 U.S.C. § 636(c). *See* Dkts. 4, 6. Plaintiff has filed an Opening Brief, and the Commissioner has filed an Opposition Brief. [Dkt. 15; Dkt. 19]. Plaintiff did not file a reply brief, and the time to do so has lapsed. *See* Dkt. 2 at 2. The Commissioner has also filed the Administrative Record. [Dkt. 11 (hereinafter "AR")].

---

[1] In actions involving requested review of a decision by the Commissioner of the Social Security Administration, the Court generally uses the first name and last name initials of the plaintiff in the Court's public orders out of an abundance of caution and regard for the plaintiff's potential privacy concerns.

[2] This lawsuit was initially filed against Martin O'Malley, who was then the Acting Commissioner of the Social Security Administration. *See* Dkt. 1. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, who is the current Commissioner of the Social Security Administration as of the date of this Order, is "automatically substituted" as Defendant.

After carefully analyzing the briefs, the record, and the applicable law, the Court **REVERSES** the Commissioner's final decision.

### BACKGROUND

The following background focuses only on the factual matters and procedural history that are relevant to the Court's analysis herein.

Plaintiff was born on February 1, 1968; he was fifty-three years old on the alleged disability onset date. [AR 215, 299]. He speaks English but testified he has a reading disorder. [AR 35, 38]. Plaintiff stopped schooling at age fourteen, during middle school. [AR 35]. He does not remember in what city or state his middle school was located. *Id.* He is not sure where he was born. [AR 28]. Plaintiff previously lived in Colorado and moved to California over twenty-six years ago, but does not remember what brought him to California. [AR 36]. Plaintiff's employment history includes positions as a bookkeeper, a payroll administrator, and a night auditor. [AR 38, 40, 331].

On January 16, 2022, Plaintiff protectively filed an application for disability insurance benefits, pursuant to Title II of the Act, and for supplemental security income, pursuant to Title XVI of the Act. [AR 12, 215-28]. In his applications, Plaintiff alleged that he had been unable to work, since September 23, 2021, due to schizophrenia, autism, paranoia, bipolar disorder, rheumatoid arthritis, multiple sclerosis (MS), lung disease, Alzheimer's disease, depression, and dissociative identity disorder (DID). [AR 303].

In his Adult Function Report, Plaintiff reported the following illnesses or conditions limiting his ability to work: severe chronic depression; crippling paranoia; shortness of breath; frequent migraine headaches and seizures; dizziness and loss of balance; confusion; memory lapses; difficulty concentrating and communicating; extreme anxiety; inability to follow instructions or learn anything new; paralyzing pain; exhaustion and lack of energy; inability to function around people. [AR 347]. In terms of daily activities, Plaintiff reported: "I'm not able to get much done at all. I mostly stay in bend." [AR 348]. He further reported that, while he was able to do the following before the onset of his illnesses or conditions, he now cannot "drive a car; run; work around people; read; engage in conversations." *Id.* Plaintiff reported that he fears

2

leaving his house and "almost never" goes outside, leaving "only to retrieve mail and dispose of trash." [AR 350]. Plaintiff reported that when he goes out, he only walks. *Id.* He reported that he does not drive due to "lack of concentration and ability to operate a vehicle." *Id.* Plaintiff further remarked: "I don't have any friends or family or anyone else that I associate with. No one else is familiar with my condition or my history. I am a complete loner and a recluse." [AR 354].

Because Plaintiff did not submit any medical records in connection with his applications, the agency ordered Plaintiff to undergo consultative physical and mental examinations. Appointments were scheduled for April 2, 2022 (in Chico, California, over ninety miles distance from Plaintiff's residence at the time in Clearlake, California) and for April 23, 2022 (in Santa Rosa, California, approximately fifty miles distance from Plaintiff's residence). [AR 419-20]. Plaintiff failed to appear at these appointments. *Id.*

The Commissioner denied Plaintiff's applications, initially on May 13, 2022, and upon reconsideration on August 24, 2022. [AR 99-111].

Plaintiff then successfully requested a hearing before an administrative law judge. [AR 112-44]. In advance of the hearing, on October 5, 2022, the agency contacted Plaintiff, requesting, among other things, information regarding "any medical treatment" that Plaintiff had obtained and any diagnoses that he had received for his alleged medical conditions. [AR 145]. On October 7, 2022, the agency advised Plaintiff: (1) that his applications had been denied at the initial and reconsideration levels because he had "provided no medical treatment information" and failed to appear at scheduled consultative examinations; (2) that medical evidence was "required" to substantiate Plaintiff's allegations of disability; and (3) that Plaintiff "would need to supply" this required medical evidence. [AR 156-58].

The agency rescheduled Plaintiff's missed consultative examinations scheduled for October 30, 2023 (in Santa Rosa, California over fifty miles distance from Plaintiff's current residence) and December 4, 2023 (in Sebastopol, California over sixty miles distance from Plaintiff's residence). [AR 421-22]. Plaintiff failed to appear at these appointments as well. *Id.* The records of the services bills for each of these two examinations were filled out in the name of Disability Examiner "Alma N." *Id.*

On April 4, 2024, Plaintiff's requested hearing was held before Administrative Law Judge K. Kwon (hereinafter, "the ALJ"). [AR 22-58]. Plaintiff appeared and testified at the hearing *pro se*. The ALJ also heard testimony from a vocational expert. Medical opinions were provided by two state agency non-examining physicians, J. Allen, M.D. and R.A. Tyl, M.D. [AR 59-76, 79-96]. The record contained no other medical evidence. The record reflected that Plaintiff failed to appear at the four scheduled consultative examinations noted above. [AR 419-22].

At the April 4, 2024 hearing, which was conducted remotely via telephone, the ALJ first questioned Plaintiff regarding his decision to appear *pro se*. Plaintiff confirmed that he had received multiple notices regarding how to obtain a legal representative. He testified that he had made several attempts to retain counsel, but no person would "agree to represent [him] because [of] the lack of medical documentation." [AR 26].

The ALJ noted that the hearing had been rescheduled, at Plaintiff's request, "at least two, if not three times" over the course of the past year. [AR 25]. The ALJ informed Plaintiff that, "at this point," his case was considered to be "an aged case." *Id.*

The ALJ asked Plaintiff questions regarding his biographical background. Plaintiff testified that he was "not really sure" where he was born, but he "th[ought] it was Pennsylvania." [AR 28]. When asked whether he had any aliases, Plaintiff testified that he could not "remember all the details." [AR 29-30]. Plaintiff testified that he stopped attending school at the age of fourteen, when he was in either seventh or eighth grade. [AR 35]. Plaintiff testified that he did not remember in what city or state his middle school was located. [AR 35]. Plaintiff testified that he had lived in Colorado at some point during childhood, and eventually moved to California twenty-six years ago, but that he did not remember what brought him to California. [AR 36]. Plaintiff confirmed that he spoke English but testified that he has a reading disorder. [AR 35, 38].

Plaintiff testified that he had been living alone for at least two decades. Plaintiff testified that he previously lived in Clearlake, California and moved eight months earlier to his present residence in a rural part of Kelseyville, California. Plaintiff testified that, due to his medical impairments, he had been unemployed for the past three years. [AR 38]. Plaintiff testified that he relied on "credit card debt," food stamps, and Medi-CAL to pay for the necessities of life. [AR

41-42].  Plaintiff testified that, on a typical day, he stayed indoors and went online to check his emails and finances.  [AR 48].

Plaintiff testified that he had a driver's license, but stopped driving because he "was having a lot of trouble" and "would forget where [he] was.  It was really scary."  [AR 37, 42].  He testified that he stopped driving "about" three years ago "maybe closer to four."  [AR 42-43].  Earlier in the hearing, Plaintiff explained that he was "not able to drive anymore" and did not "really have anyone to help" him.  [AR 27].

Plaintiff testified that he does not do anything regularly outside of the home.  [AR 48].  He testified that he does all of his grocery shopping online and takes care of his finances and bills online.  *Id.*  He testified that he suffered from anxiety and had difficulty "in public situations" or otherwise "being around people."  [AR 46].

The ALJ questioned Plaintiff more specifically regarding his failure to appear at the four scheduled consultative medical examinations.  Plaintiff told the ALJ that he "was trying to reschedule" the appointments "to find out whether it be possible to have a remote examination." [AR 27].  Plaintiff testified that he "received a voice message from someone, I think she said her name was Alma, and she, she said that I could have a remote examination but then when I tried to - - I don't have any transportation."  *Id.*  Plaintiff explained that he was unable to attend in-person examinations, because "I don't have any transportation.  I'm not able to drive anymore and I don't really have anyone to help me and the appointments that they scheduled were far away and there isn't even any taxi service in this area[.]"  *Id.*  The ALJ questioned the lack of taxi service and Plaintiff testified that "[t]here's nothing where I am.  I'm all the way out in the country.  I'm like by the lake here.  There's nothing in this area."  [AR 28].  Plaintiff testified that he lived alone, and that he knew no one who could drive him to scheduled appointments.  [AR 27, 29].

In response to the testimony about remote examination, the ALJ asked Plaintiff "[a]gain, do you want to proceed with your case today and I can try to set something up remotely?  It's not guaranteed but you have enough time to maybe get some assistance in getting transportation or that you might be able to do remotely."  [AR 28].  After questioning Plaintiff further, the AJL stated, "I'm going to go forward and try to assist you, if you'd like me to try to assist you. . . . I'll

find out the circumstances of whether we can get a consultative exam schedule again. We would have to make sure that you can appear or it will be fruitful because, again, four different times have been scheduled and with no shows." [AR 30]. In summarizing the file for Plaintiff, the ALJ stated, "We have four, separate consultative exams set up and scheduled for the last two years and none were attended. So, again, I hesitate to schedule anymore and maybe we can understand some transportation issues so I'll try to see if we can make some plans so I can coordinate something that will be fruitful but I'm not sure what is available with that region[.]" [AR 32].

The ALJ explained to Plaintiff that the record contained no objective medical evidence. The ALJ advised Plaintiff that, in light of the lack of any supporting medical records, he had one of two options. As to the first option, the ALJ explained:

> We can go forward today. That means that I'm going to take your testimony and if you tell me that you've had some treatment, I can try to help you and you can give us your authorization for ability . . . to request on your behalf. If you, you know, tell me that you haven't gone anywhere at all, I'll consider all of the circumstances and whether a new consultative exam is warranted but I have to tell you, you know, based on the history of four different ones that were no-shows, I'm hesitant to do that.

[AR 26].

As to the second option, the ALJ explained:

> The other option for you is to withdraw your Request for a Hearing all together [sic] if you're, you know, circumstances have changed. . . . I don't know if you're currently, if you're working, but that's something that you can do and then refile at a later point after you have treatment and you want to go forward at that time.

*Id.*

Plaintiff affirmed that he would like to proceed with the hearing. [AR 28].

The ALJ next summarized the existing record. The ALJ again explained to Plaintiff that the medical portion of his case file was empty. [AR 32]. The ALJ noted that Plaintiff alleged disability due to "a number of different things," including "depression, Alzheimer's, lung disease, MS, rheumatoid arthritis, bipolar, paranoia, autism, [and] schizophrenia." *Id.* The ALJ advised Plaintiff that he had only "alleged these things," and that it was his burden to provide medical evidence supporting his disability claim. *Id.* The ALJ reiterated that the existing record lacked "any evidence that [Plaintiff] submitted." *Id.*

The ALJ questioned Plaintiff regarding his medical history. Plaintiff testified that he underwent two successive hernia operations approximately four or five years ago. [AR 44]. Plaintiff denied any follow-up treatment for that condition. Plaintiff testified that he had not sought or obtained any other medical treatment in the past five years, including for any of the conditions that he alleged prevented him from working. [AR 44-45]. Plaintiff denied taking any medications in the past five years, aside from pain medications relating to the hernia operations. When asked why he had not sought any other medical treatment besides the hernia operations, Plaintiff testified that he had "anxiety" and difficulty being in public settings. [AR 46].

Plaintiff testified that he was diagnosed with "psychiatric disorders" over ten years ago. [AR 49-50]. He testified that, with regard to the "psychiatric disorders," "there have been many different, different doctors[.]" [AR 50]. In response to the ALJ's question, Plaintiff affirmed that he "saw them, professionals, and they diagnosed [him] with these things." *Id.* He testified that, with regard to treatment, he has "taken many medications but none of them were really helpful." *Id.*

At the hearing, the ALJ noted that "there's also all of these consultative examinations we've scheduled and four of them, actually, and none of the appointments were kept. So, there's certain things I can do to help develop the case but I do have to move forward since we have rescheduled this, it looks like at least two, if not three times[.]" [AR 25]. The ALJ further explained to Plaintiff that, "if you tell me that you've had some treatment, I can try to help you and you can give us your authorization for ability to give us an ability to request on your behalf. If you, you know, tell me that you haven't gone anywhere at all, I'll consider all of the circumstances and whether a new consultative exam is warranted but I have to tell you, you know, based on the history of four different ones that were no-shows, I'm hesitant to do that." [AR 26].

On May 10, 2024, the ALJ issued a written decision which followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application. [AR 12-16]. The five-step analysis requires the ALJ to consider whether the claimant: (1) has engaged in "substantial gainful activity" during the alleged period of disability; (2) has a medically determinable impairment or combination of such impairments that is "severe;" (3) has a condition

United States District Court
Northern District of California

that meets or equals the severity of a listed impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).

In the written decision, the ALJ determined, at step one, that Plaintiff had engaged in substantial gainful employment from the alleged onset date, September 23, 2021, through December 31, 2021.  [AR 14].  However, the ALJ determined that Plaintiff did have "a continuous 12-month period during which [he] did not engage in substantial gainful activity."  [AR 15].  The ALJ stated that "[t]he remaining findings address the period(s) the claimant did not engage in substantial gainful activity."  *Id.*

At step two of the analysis, the ALJ found that the record contained "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment."  *Id.* Specifically, the ALJ found that the record was entirely devoid of "any medical evidence" regarding Plaintiff's alleged impairments.  [AR 16].  The ALJ noted that Plaintiff failed to appear for each of four scheduled consultative examinations.  [AR 15].  The ALJ noted that Plaintiff "testified that he did not have transportation; however, the undersigned Administrative Law Judge noted the claimant was able to travel for his work and moved in 2023 from Clearlake to Kelseyville, CA.  The claimant testified that he has no restrictions on his driver's license and used to drive regularly up until about three years ago.  He only drives now only when needed. Moreover, he had several public transportation options near the claimant."  *Id.*

The ALJ further noted that, per Plaintiff's own testimony at the hearing, Plaintiff did not seek or obtain treatment for any of his alleged symptoms at any time during the relevant period. [AR 16].  The ALJ summarized the opinions from two non-examining state agency medical consultants, finding that there was "insufficient evidence" in the record to support a disability finding.  *Id.*  The ALJ found the opinions "persuasive," "supported by notes from the file," and "consistent with the claimant's lack of medical treatment confirmed by his own testimony and lack of records from any treating provider."  *Id.*

Because the ALJ found no medical signs or laboratory findings to substantiate the

existence of any medically determinable impairments, the ALJ determined, at step two, that Plaintiff was not under a "disability," as defined by the Act. *Id.* For that reason, the ALJ denied Plaintiff's applications for disability insurance benefits and supplemental security income. *Id.* That denial, which became the Commissioner's final decision, prompted Plaintiff's request for judicial review. [AR 1-6]; *see* Dkt. 1.

## STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a hearing." 42 U.S.C. § 405(g). The Court's review in such cases is limited to determining: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

"Substantial evidence" is "'more than a mere scintilla' but only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Woods*, 32 F.4th at 788 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)); *see Biestek*, 587 U.S. at 103 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). In evaluating whether substantial evidence supports a finding, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Any conflict in the evidence is to be resolved by the ALJ, and not the Court. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.").

Plaintiff is proceeding in this matter *pro se*. As such, the Court construes his pleadings

9

liberally and affords him "the benefit of any doubt." *Hopkins v. Berryhill*, 697 F. App'x 892, 892 (9th Cir. 2017) (quoting *Bretz v. Kellman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

**ANALYSIS**

As summarized above, the ALJ's May 10, 2024 written decision under review followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application.  [AR 25-37]; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four.  *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)).  The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience.  *Id.*

A finding that a claimant is "disabled" or "not disabled" at any point in the five-step review is conclusive and terminates the analysis.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  42 U.S.C. §§ 423(d)(1)(A), (2)(A).

In his Opening Brief, Plaintiff asks the Court to compel the Commissioner to reevaluate his applications "after additional efforts to substantiate the presence of a determinable medical impairment have been completed."  [Dkt. 15 at 1].  Conceding that the record before the ALJ at the time of the hearing lacked any "medical documentation," Plaintiff argues that the ALJ's "decision to proceed forward with the hearing absent the provision of any medical records" was "perfunctory" and "prejudicial."  *Id.* at 2.  Plaintiff reiterates that he is "incapable" of undergoing in-person examinations.  *Id.*  He argues that "more efforts should have been made to afford him the opportunity to substantiate the presence of a psychiatric disorder by means of a telehealth conference."  *Id.*  Plaintiff asks that his case be remanded for further administrative proceedings so that he may be "afforded a proper opportunity to substantiate the presence of a determinable medical impairment, without being required to attend any in-person examinations."  *Id.* at 3.

The Commissioner argues, in response, that Plaintiff's Opening Brief "fails to raise any

10

specific argument to demonstrate error by the ALJ," and thus, "fail[s] to present any issue for judicial review." [Dkt. 19 at 2].  The Commissioner argues that, regardless, the ALJ properly considered the entire evidentiary record and followed the applicable, controlling law in determining that Plaintiff is not disabled for purposes of the Act.  *Id.* at 4-7.

The Court liberally construes Plaintiff's Opening Brief as asserting the following arguments: (1) the ALJ failed to adequately develop the record by obtaining a consultative examination; and (2) the ALJ's step two finding of non-disability is not supported by substantial evidence.

### Duty to Develop the Record

"The ALJ has a duty to conduct a full and fair hearing."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (remanding where ALJ failed to develop record where duty to inquire was triggered by ambiguity in the record).  "Social security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  An ALJ is obligated "to fully and fairly develop the record and to assure that the claimant's interests are considered."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  "This duty extends to the represented as well as to the unrepresented claimant."  *Id.*

At the hearing, the ALJ here acknowledged their duty to develop the case, and acknowledged that Plaintiff here was proceeding *pro se*.  [AR 24-25].  As the Ninth Circuit has held, "where the claimant is not represented, it is incumbent upon the ALJ 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'  He must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'"  *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978); *see also McLeod*, 640 F.3d at 885.

Here, Plaintiff alleges disability based on, among other things, psychiatric disorder conditions including schizophrenia, autism, paranoia, bipolar disorder, Alzheimer's disease, depression, and dissociative identity disorder (DID).  [AR 303].  Plaintiff testified that he has been diagnosed by "many different doctors" for his psychiatric disorders (albeit over ten years ago), and that he had been prescribed "many medications but none of them were really helpful."  [AR 50].

11

An ALJ may elect to develop the record by obtaining a consultative examination. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to . . . determin[e] . . . your claim"); 20 C.F.R. §§ 404.1512(b)(2), 416.912(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). An ALJ has "broad latitude" in decided whether to order a consultative examination. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). A consultative examination is appropriate when there is an "ambiguity or insufficiency in the evidence that must be resolved." *Id.*

Here, the testimony about Plaintiff's previous diagnoses and treatments, which link directly to his claimed disability, triggered a duty of inquiry where the current record was incomplete. Indeed, here, there were four consultative examinations scheduled, indicating that the agency believed that the record required more evidence to resolve ambiguities or insufficiency in the evidence.

If a claimant cannot attend a scheduled consultative examination, the regulations require the claimant tell the agency "as soon as possible." 20 C.F.R. §§ 404.1518(a), 416.918(a). If the claimant has a "good reason" for missing the appointment, the agency will schedule another examination. *Id.* The regulations provide four non-exhaustive examples of what constitutes good reason: (1) illness on the examination date; (2) receiving no notice or not receiving timely notice; (3) receiving incorrect or incomplete information about time and place of the exam or the physician involved; and (4) death or serious illness in your immediate family. 20 C.F.R. §§ 404.1518(b)(1)-(4), 416.918(b)(1)-(4). The agency considers the claimant's "physical, mental, educational, and linguistic limitations . . . when determining if [the claimant has] a good reason for failing to attend a consultative examination." 20 C.F.R. §§ 404.1518(a), 416.918(a). The regulations warn that a claimant who does not provide a good reason for failing to attend a consultative examination may be found not disabled. *Id.* ("If you . . . do not have a good reason for failing or refusing to take part in a consultative examination . . . , we may find you are not disabled or blind.").

Here, there is no dispute that Plaintiff failed to attend the four in-person consultative

12

examinations.  However, there is also nothing in the record to undermine Plaintiff's testimony that his failure to attend the in-person examinations directly resulted from the very psychiatric conditions which form the basis of his alleged disability, as well as Plaintiff's inability to find transportation to the examinations—which as discussed above, were scheduled at locations anywhere from fifty to over ninety miles from his home.

Liberally construing his Opening Brief, Plaintiff also argues that the ALJ erred in their duty to develop the record, specifically by failing to obtain a consultative examination to address with objective medical evidence Plaintiff's allegations of disability.  In this regard, it is worth noting that the ALJ did not make an express finding that Plaintiff lacked "good cause" or "good reason" to not attend the consultative examinations.  *See* AR 15.

With regard to the psychiatric conditions, Plaintiff testified that he does nothing regularly outside his home, that "it's really difficult for [him] just to be in public situations," and that he experiences panic attacks being around other people.  [AR 46, 48].

The written record is even more explicit.  At the initial stages of Plaintiff's applications, the agency denied Plaintiff's disability claim because "the applicant is responsible for furnishing evidence to support the claim.  Although you have been requested to furnish additional evidence, you have not done so.  Therefore, a determination has been made based on the evidence in file.  This evidence does not show that you are disabled." [AR 99].  In seeking reconsideration, Plaintiff wrote explicitly that "I DISAGREE WITH THE DETERMINATION MADE ON MY CLAIM FOR SSI DISABILITY/TITLE II BENEFITS BECAUSE I AM TOO ILL TO LEAVE MY HOME, EVEN TO PARTICIPATE IN MEDICAL EVALUATIONS."  [AR 104].  In his subsequent request for a hearing before an ALJ, Plaintiff similarly wrote that "I DISAGREE WITH THE DETERMINATION MADE ON MY CLAIM FOR SSI DISABILITY/TITLE II BENEFITS BECAUSE I AM TOO ILL TO LEAVE MY HOME, EVEN TO UNDERGO MEDICAL EXAMINATIONS OF ANY KIND." [AR 112].

In an Adult Function Report sent to Plaintiff on January 19 , 2022, Plaintiff wrote: "I'm not able to get much done at all.  I mostly stay in bed." [AR 348].  In that same Report, Plaintiff wrote that he was previously able to drive a car before his illnesses or conditions but cannot do so

now. *Id.* Plaintiff further wrote that he "almost never" goes outside and "only to retrieve mail and dispose of trash. [AR 350]. The explanation Plaintiff provided is that he was "afraid to leave [his] house." *Id.* As explanation for why he does not drive, Plaintiff wrote: "Lack of concentration and ability to operate a vehicle." *Id.* Plaintiff answered affirmatively that he has "noticed any unusual behaviors or fears" and explained that "[e]verything seems to frighten me lately." [AR 353]. He further wrote: "I don't have any friends or family or anyone else that I associate with. No one is familiar with my condition or my history. I am a complete loner and a recluse." [AR 354].

In responding to a second Adult Function Report (sent to Plaintiff by the California Health and Human Services Agency on June 22, 2022), Plaintiff wrote "I'm not able to leave my house anymore. I have so many difficulties I don't even know how to describe everything." [AR 377]. He further wrote: "I'm not able to get done much of anything most days. Everything has become a major struggle for me." [AR 378]. Plaintiff responded that he can no longer leave his house, which he was able to do prior to his illnesses or conditions. *Id.* Plaintiff further reported that he "almost never" goes outside. [AR 380]. He reported again that he does not drive and explained "I'm not able to drive anymore." *Id.* He further reported that he avoided people and that "[e]verything frightens" him. [AR 382-83].

In a Disability Report dated August 29, 2022, Plaintiff wrote: "I am very isolated and don't have anyone to assist me. There is no way that I would be able to leave my home for medical examinations. The case workers assigned to my file don't seem to understand this, and they keep sending me letters and leaving messages for me to call them, but I don't have any long-distance carrier on my telephone, so I can't dial the telephone number in Sacramento that is listed on the letters. I am very badly in need of financial assistance, because I am no longer well enough to travel to any employment outside my home, and I don't have any other means of income." [AR 394]. In a Report of Contact dated October 7, 2022, the Hearings Customer Service Specialist memorialized a telephone call with Plaintiff which notes that: "I asked him if has a specific issue with reading he said something is wrong with his brain." [AR 157]. That same Report notes that the Specialist "asked were [Plaintiff's listed conditions] self diagnosed he said I guess. I cannot leave the house," and that "[h]e said he cannot leave the house to seek medical care and he has no

United States District Court
Northern District of California

United States District Court
Northern District of California

way to get to appointments." [AR 157-158].

All of these written records predate the April 4, 2024 hearing before the ALJ. In light of Plaintiff's unrepresented status, the testimony at the hearing combined with the written record submitted prior to the hearing at least put the ALJ on notice to inquire further in order to properly develop the record here. The ALJ's decision makes no express findings concerning the written record. Plaintiff argues now that he should have been afforded the opportunity to participate in a remote consultative examination, in light of both his alleged psychiatric conditions and his inability to drive (which he testified was caused by his mental conditions). Where, as here, a claimant's alleged disabling psychiatric conditions prevent attending in-person consultative examinations, it was error for the ALJ to rely on that failure to attend the examinations without further developing the record to deny the claimed benefits. "Hospitalization is not required to show that mental health conditions such as PTSD, OCD, and anxiety are disabling from employment. The ALJ recognized that [claimant] Schiaffino does see a psychiatrist regularly, but faulted him for not going more often. '[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Schiaffino v. Saul*, 799 F. App'x 473, 476 (9th Cir. 2020) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).

As discussed above, Plaintiff here alleges that one of his disabling mental conditions is depression. In *Nguyen*, the Ninth Circuit noted that "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [claimant's psychologist] Dr. Brown's assessment of claimant's condition is inaccurate." *Nguyen*, 100 F.3d at 1465 (internal citation omitted); *see also Dyer v. Astrue*, No. 09-229-GWU, 2010 WL 881916, at *7 (E.D. Ky. Mar. 8, 2010) ("Regarding the plaintiff's missed psychiatric appointments, the Sixth Circuit has said that 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'").

15

The Ninth Circuit also has held that a claimant's mental impairment must be taken into account when evaluating the claimant's ability to comply with procedural requirements and prosecute their claim. *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (per curiam). In *Higbee*, the Ninth Circuit reversed the Commissioner's denial of continued SSI benefits where the claimant was a paranoid schizophrenic who refused to provide information on his residence. *Id.* Specifically, the Ninth Circuit held that "the lack of evidence, coupled with the claimant's mental illness, 'casts a cloud of doubt,' on whether the Secretary's decision was correct. Further, it would be contrary to the purpose of the S.S.I. program to affirm the Secretary's decision as based on [the claimant]'s failure to cooperate, when the record suggests the failure may be due to the very mental illness that rendered [the claimant] eligible for benefits. Prior to taking such a drastic step, we believe it was incumbent on the A.L.J. to continue the administrative hearing so S.S.A. personnel could investigate" further. *Id.* at 562 (citation omitted).

Pursuant to the guidance in *Higbee*, here, the lack of evidence on Plaintiff's allegedly disabling conditions coupled with Plaintiff's alleged mental illness (also including schizophrenia as in *Higbee*) casts a cloud of doubt on the ALJ's decision to deny benefits based on the failure to provide objective medical evidence without continuing the administrative hearing so that a remote consultative examination could be undertaken.

Indeed, the Ninth Circuit has further clarified that "[i]In cases of mental impairments, this duty [to develop the record] is especially important. 'Because mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence concerning onset, development should be undertaken in such cases to ascertain the onset date of the incapacitating impairment.'" *Delorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (citation omitted) (remanding to ALJ to fully develop the record); *see also Higbee*, 975 F.2d at 562 ("When a claimant is both unrepresented and suffers from a mental impairment . . . the ALJ's duty to carefully develop the record is even greater.").

Faulting Plaintiff's failure to attend the in-person consultative examinations without considering his asserted psychologically disabling conditions (including schizophrenia, autism, paranoia, bipolar disorder, depression, and dissociative identity disorder (DID)) as well as his

United States District Court
Northern District of California

testimony and the written record demonstrates that the record here was not sufficiently developed. Where an ALJ has found that a claimant "failed to comply with requests to undergo further psychological testing" as a basis for denying benefits, such a finding requires reversal because "[c]ourts have recognized, however, that an individual's noncompliance with medication regimes may be attributable to the mental illness itself, rather than willful conduct." *Grimaldo v. Colvin*, No. 5:13-CV-098-C, 2014 WL 2547070, at *5 (N.D. Tex. June 5, 2014).

Similarly, in *Bousquet v. Apfel*, 118 F. Supp. 2d 1049 (C.D. Cal. 2000), the court recognized that "[i]t is true, of course, that plaintiff's failure to appear at the hearing and for his consultative examinations is the primary reason that the record lacks evidence that might definitively contradict or corroborate the treating physician's diagnosis. Plaintiff's failure to cooperate cannot be condoned, but neither can the totality of the circumstances be ignored. The ALJ conceded that plaintiff was disabled by a mental impairment during the period when he failed to appear at the hearing and at his consultative examinations. . . . Moreover, plaintiff's failure to attend the hearing and his scheduled consultative examinations did not necessarily exonerate the ALJ from taking additional steps to develop the record." *Id.* at 1055-56.

As in *Bousquet*, Plaintiff's failure to attend his consultative examinations here did not obviate or remove the ALJ's duty to fully develop the record for this self-represented claimant who alleged multiple disabling psychiatric conditions.

Here, the record of testimony at the hearing put the ALJ on notice to more fully develop the record. In *Brown v. Apfel*, No. A 97 CA 308 SS, 1998 WL 1031526 (W.D. Tex. Sept. 14, 1998), the court held:

> The record in this case shows the ALJ failed to adequately develop the record. He was presented with a woman with an IQ of 67 who twice mentioned that she suffered from depression. When the ALJ asked [the claimant] if she suffered from any mental or emotional problems, she indicated that she got depressed and that once she had seen her doctor for the depression. [The claimant] indicated she had seen the doctor in the near past—either a year ago or a few months ago—and the doctor sent [the claimant] to MHMR. After speaking with a lady [the claimant] presumed was a counselor, [the claimant] signed something and left. When the ALJ asked [the claimant] if the counselor told [the claimant] to return, [the claimant] responded, "No. She said she wouldn't be there." This nonsensical answer should have alerted the ALJ that, at the very least, he needed to ask additional questions to determine exactly what happened at MHMR. Ideally, the ALJ should have recessed the hearing

17

until he could obtain the records from [the claimant]'s visit to MHMR or ordered a consultative examination to investigate [the claimant]'s possible depression. [The claimant]'s statement that she had been depressed and had seen both her own doctor and a counselor at MHMR should have raised a suspicion in the ALJ's mind that [the claimant] might suffer from depression or some other mental impairment.

*Id.* at *2 (internal citations omitted).

Here, as in *Brown*, Plaintiff asserted disability based on several psychiatric conditions (including depression, like the claimant in *Brown*) and testified that he was diagnosed with "psychiatric disorders" over ten years ago and that "there have been many different, different doctors[.]" [AR 50]. When testifying about his request for a remote consultative examination, Plaintiff testified with a nonsequitur that he "received a voice message from someone, I think she said her name was Alma, and she, she said that I could have a remote examination but then when I tried to - - I don't have any transportation." [AR 27]. As in *Brown*, the written record, the testimony, and the somewhat nonsensical responses should have at the very least alerted the ALJ that there was a need to ask additional questions to determine exactly why a remote consultative examination was not scheduled or undertaken. Here, as in *Brown*, the ALJ should have recessed the hearing and ordered a remote consultative examination to investigate Plaintiff's possible depression and other psychological conditions. Like the ALJ in *Brown*, here, Plaintiff's testimony about having been diagnosed with multiple psychiatric disorders and having been prescribed medications should have raised a suspicion in the ALJ's mind that Plaintiff might suffer from depression or some other mental impairment. At the very least, the ALJ should have been alerted by this testimony to ask further questions and take steps to obtain those records from those "many" treating physicians—this was a further failure to develop the record. The failure to engage in these further steps here, like in *Brown*, leads to the same conclusion that "the ALJ failed to fulfill his special duty to an unrepresented, mentally deficient and possibly depressed claimant." *Brown*, 1998 WL 1031526, at *2.

Here, as detailed above, Plaintiff testified that he tried to reschedule the consultative examinations so that they could be done remotely; that he received a voicemail from "Alma" regarding remote examination; but that he was unable to schedule a remote examination. [AR 27].

18

The medical records indicate that "Alma N." was the Disability Examiner for the last two scheduled examinations. [AR 421-22]. Indeed, the ALJ noted at the hearing that the agency "can try to set something up remotely," noting that, while there was no guarantee, Plaintiff had "enough time to maybe get some assistance in getting transportation or that you might be able to do remotely." [AR 28]. The record was thus, at best, ambiguous as to whether Plaintiff could be examined remotely and that ambiguity further triggered a duty to inquire further. *Breen v. Callahan*, No. C 97-1389 CRB, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998) (The duty to develop the record by ordering a consultative examination is generally triggered by "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision") (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Wainwright v. Sec'y of Health & Human Servs.*, 939 F.2d 680, 682 (9th Cir. 1991)).

The ALJ's decision to order a consultative examination is a discretionary one. *Reed*, 270 F.3d at 842 ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.' The government is not required to bear the expense of an examination for every claimant.") (citations omitted); *see also* 20 C.F.R. § 416.919a(b) ("[An ALJ] *may* purchase a consultative examination to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [a disability] claim.") (emphasis added). However, the Ninth Circuit has recognized that "[s]ome kinds of cases, however, do 'normally require a consultative examination,' including those in which 'additional evidence needed is not contained in the records of [the claimant's] medical sources,' and those involving an 'ambiguity or insufficiency in the evidence [that] must be resolved.'" *Reed*, 270 F.3d at 842. Here, there was at least insufficiency in the evidence that should have been resolved regarding Plaintiff's mental conditions. As noted above, the Commissioner implicitly acknowledged this insufficiency in the evidence by trying to schedule four consultative examinations for Plaintiff here. Having decided that consultative examination is appropriate, the Commissioner should have made arrangement for that examination to be conducted in a manner which takes into account Plaintiff's alleged mental conditions which prevented in-person examination (instead of simply repeatedly scheduling in-person examinations where Plaintiff testified that he had tried to communicate his desire for

19

remote examination).

Ultimately, the ALJ based the non-disability finding on the lack of any objective medical evidence within the record, without taking into consideration Plaintiff's testimony and the fact that the disability claimed here includes several potentially severe psychiatric conditions.  The ALJ's decision makes no mention of the written record including multiple functional reports (summarized above) which set forth Plaintiff's written explanations for his inability to attend an in-person examination.  *Cf. Contreras v. Saul*, 477 F. Supp. 3d 1107, 1121-22 (S.D. Cal. 2020) (finding, in the context of credibility analysis under *Smolen*, the ALJ erred where he "failed to identify *specific* statements from Plaintiff's testimony or functional report that were not credible").  There is insufficient basis in the record as a whole to support the ALJ's rejection of Plaintiff's testimony as to his confusion, fear, panic attacks, and other mental symptoms which prevented his ability to attend in-person examinations.  *Cf. id.* at 1127-28.

Further, because the testimony at issue is directed to Plaintiff's good cause and explanations why he did not attend the in-person examinations (and not subjective testimony directed to the severity of his symptoms), to the extent that the ALJ discounted that testimony because there was no objective medical evidence, the ALJ erred.  Objective medical evidence is not required to consider any and all subjective testimony relating in any way to symptoms.

> The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. . . . [T]he *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. *See Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir.1986) ( "[W]e have never required that the medical evidence identify an impairment that would make the pain inevitable.").  Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  "The amount of pain caused by a given physical impairment can vary greatly from individual to individual." *Fair*, 885 F.2d at 601.  This is also true for fatigue.  Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

*Smolen*, 80 F.3d at 1282 (citations omitted).

Here, there was sufficient evidence in the record (especially in light of Plaintiff's testimony as a *pro se* claimant alleging mental conditions) to warrant requiring the ALJ to follow through on

20

United States District Court
Northern District of California

their discussion with Plaintiff at the hearing that the ALJ "can try to set something up remotely." [AR 28]. "[A] consultative examination is often required for proper resolution of a disability claim." *Reed*, 270 F.3d at 842 (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)). "[T]he ALJ's decision to proceed without ordering a consultative examination by a rheumatologist was not based on a determination that the evidence already in the record was sufficient." *Id.* at 843. Here, the ALJ made no express determination that the evidence already in the record was sufficient with regard to Plaintiff's alleged mental disabilities. [AR 16]. Rather, the only medical evidence cited by the ALJ is from two agency medical consultants who both "commented that there was insufficient evidence." *Id.* As in *Reed* and other applicable legal precedent, the insufficiency of evidence should have prompted the ALJ to take steps to cure the insufficiency, rather than rule peremptorily against this self-represented claimant based solely on the failure to submit medical evidence.

Further, Plaintiff testified as to the logistical inability to travel distances for an in-person examination, including the testimony that he does not drive, that there is no public transportation in his rural area, and that he has no friends or family who can assist with transportation. As discussed below, the ALJ improperly rejected that testimony outright which is otherwise uncontradicted by evidence in the record. Upon receiving this testimony and uncontradicted information, the ALJ was at the very least on notice to make further inquiry and determine if a remote examination could be scheduled (a possibility mentioned but never acted on by the ALJ).

On this record, then, the Court finds that the ALJ's written decision denying Plaintiff's applications for disability insurance benefits and supplemental security income, which became the Commissioner's final decision for purposes of federal district court review, is not supported by substantial evidence.

### Step Two Analysis

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe" impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish severity, the evidence must show the impairment significantly limits a claimant's

21

physical or mental ability to do basic work activities for at least twelve consecutive months.  "[A]t the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."  *Smolen*, 80 F.3d at 1290.  "[A]n impairment is found not severe . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  *Yuckert v. Bowen*, 841 F.2d 303 (9th Cir. 1988) (quoting SSR 85-28).

At the second step, the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his impairments are severe and are expected to last for a continuous period of twelve months.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); *see also* C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). An ALJ's finding that a claimant is not disabled at step two may be upheld where "there are no medical signs or laboratory findings to substantiate the existence of medically determinable physical or mental impairment."  *Ukolov*, 420 F.3d at 1005 (citing SSR 96-4p, 1996 WL 374187, at *1-2).  The Act makes clear that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence thereof as the Commissioner of Social Security may require."  42 U.S.C. § 423(d)(5)(A); *see also* 20 C.F.R. § 404.1512(a) ("[Y]ou must furnish medical and other evidence that we can use to reach our conclusions about your medical impairment(s)."); SSR 16-3p ("We will not find an individual disabled based on alleged symptoms alone.").

Here, the ALJ found that Plaintiff failed to carry his burden of providing objective medical evidence to establish a severe medically determinable impairment, because Plaintiff failed to submit any medical records from any of the four scheduled consultative examinations or from treating physicians.  [AR 15-16].  As discussed above, the ALJ's findings on Plaintiff's failure to attend the consultative examinations resulted directly from the ALJ's failure to meet the duty to develop the record.  And as discussed above, where Plaintiff testified at the hearing that he had been diagnosed by "many different doctors" years ago for his psychiatric conditions and that he was prescribed many medications, the ALJ's failure to take steps to obtain those records from

United States District Court
Northern District of California

treating physicians was also a failure to develop the record.  The ALJ's decision here is based completely on the failure to submit objective medical evidence; as discussed above, the ALJ erroneously laid that burden entirely on Plaintiff's shoulders here.

The ALJ's findings regarding Plaintiff's reasons for not attending the consultative examinations are cursory and do not take into account the uncontradicted testimony offered at the hearing.  Plaintiff testified at the hearing that he has not driven for as many as four years, because he "was having a lot of trouble" and "would forget where [he] was.  It was really scary." [AR 37, 42].  As discussed above, this testimony is wholly consistent with the written record, including functional reports.

Further, Plaintiff testified that there is no taxi service or other transportation available in his rural area.  [AR 27-28].  Despite this uncontroverted testimony, the ALJ ruled that Plaintiff "had several public transportation options near the claimant." [AR 15].  That finding in the ALJ's written decision cites no evidence in the record, and the only evidence in the record is Plaintiff's testimony which (as discussed above) is wholly to the contrary.  Even under the deferential standard of review applicable here, this finding by the ALJ is not supported by substantial evidence.  *Woods*, 32 F.4th at 788.  Indeed, there is no evidence.  Thus, this is not a situation where there is competing evidence at all—here there is not even a scintilla of evidence in the record to support the ALJ's finding that there were "several public transportation options" available to Plaintiff.

Further, the ALJ found that Plaintiff "only drives now only when needed." [AR 15].  That finding in the ALJ's written decision cites no evidence in the record, and the only evidence in the record is Plaintiff's testimony that he does not drive currently, which again is wholly to the contrary.  Plaintiff nowhere testified that he drives "when needed," much less "only when needed."  At best, Plaintiff merely testified that, more than three or four years prior to the hearing (and at the time of or before the alleged onset of disability), he did not drive regularly but only when he needed to go to one of the offices at which he was working at that time.  [AR 43].  Even under the deferential standard of review, this finding by the ALJ that Plaintiff "only drives now only when needed" is not supported by substantial evidence.  *Woods*, 32 F.4th at 788.  Indeed,

23

United States District Court
Northern District of California

there is not a scintilla of any such evidence.

Moreover, the ALJ rejected Plaintiff's testimony on this issue, noting that "the claimant was able to travel for his work and moved in 2023 from Clearlake to Kelseyville, CA." [AR 15]. However, the fact that Plaintiff was able to drive over three years prior to the hearing (and prior to the alleged onset of the disability) does nothing to impeach or undermine his testimony that he is unable to drive currently (or at the time of the consultative examinations) years later. And there is nothing in the record to indicate that, when Plaintiff changed residences, he drove at all. As such, the ALJ's findings here are not supported by substantial evidence. *Woods*, 32 F.4th at 788.

As detailed herein, the ALJ thus reached a conclusion that Plaintiff should have attended the consultative examinations based on findings that are not supported by substantial evidence (or any evidence, as discussed above). And it was on this basis that the ALJ concluded that the failure to submit medical evidence was sufficient basis to deny Plaintiff's claims. Where, as here, a claimant has psychiatric conditions that impair their ability to drive or leave their home, an ALJ's RFC finding and conclusion lacks substantial evidence, particularly where there was a failure to consider lay testimony on the alleged conditions. *See Page v. Astrue*, No. 08-cv-340-JD, 2009 WL 700148, at *7 (D.N.H. Mar. 16, 2009) (finding "ALJ's failure to consider [lay] testimony was not harmless," where such testimony included that claimant "could not drive because of panic attacks" and that claimant's "inability to leave the house was becoming progressively worse").

Further, to the extent that the ALJ's decision here is based on the failure to attend the consultative examinations, that decision is contrary to the remedial purpose of the Act. Where a claimant avers that their failure to attend a consultative examination was not willful and that they would attend if a remand is granted, "[c]ourts have ordered a remand in similar situations. . . . These decisions are consistent with the remedial purpose of the Social Security Act, which militates against an overly severe application of procedural sanctions so as to deny a potentially meritorious claim." *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980). Here, Plaintiff now argues that he should be allowed to undergo a remote consultative examination and previously testified that he had tried to make inquiry into scheduling a remote examination. Plaintiff requested a remote hearing before the ALJ and, as noted, attended that hearing remotely. There is

24

nothing in the record to assume Plaintiff would not attend a remote consultative examination, and his testimony and actions here indicate that he would.

Additionally, where a claimant has refused to "be examined by doctors at government expense outside his home" courts have found that, in appropriate circumstances, "since the proceeding cannot be viewed as adversarial in nature, if the Secretary desires such an examination, he should be willing and able to make the arrangements necessary to have it performed at the plaintiff's home." *Ressegiue v. Sec'y of Dep't of Health, Educ. & Welfare*, 425 F. Supp. 160, 164 (E.D.N.Y. 1977). In *Ressegiue*, there was evidence that the claimant "appeared to be 'mentally retarded' [which] strongly suggests there may be severe, if not mental, problems associated with plaintiff's unfortunate condition, and which may explain his seemingly intransigent attitude." *Id.* Here, there was sufficient evidence in the record by way of Plaintiff's uncontroverted testimony regarding his current anxiety, fear of driving, confusion, and prior diagnoses of psychiatric conditions which strongly suggests that these mental conditions may explain his inability to attend the in-person consultative examinations. And as in *Ressegiue*, the Commissioner should, in these circumstances, at the very least have been willing to make the arrangements necessary to have the consultative examination performed remotely.

Finally, as discussed above, the ALJ's findings which rejected Plaintiff's explanations as to the logistical challenges for in-person examinations are not support by substantial evidence. The four in-person examinations were scheduled at locations approximately forty to ninety miles distance from Plaintiff's home. The uncontroverted testimony is that Plaintiff does not drive due to his mental conditions. The uncontroverted testimony is that Plaintiff does not leave his home due to anxiety and other mental conditions. The uncontroverted testimony is that there are no transportation services available in Plaintiff's rural area, and that Plaintiff has no friends or family who can assist with transportation. The ALJ's subjective belief that there might be transportation available in that area (which he posed as a question to Plaintiff at the hearing) is not evidence. The ALJ's decision substantively blames Plaintiff for not attending the in-person examinations despite this overwhelming evidence explaining why he failed to attend. A further practical issue is the fact that Plaintiff has established in this Court that he is entitled to proceed *in forma pauperis*

and that he does not work (and thus has very limited income). *See* Dkt. 9. Even if transportation services were available in Plaintiff's rural area, the cost of multiple one-way trips of over forty miles by taxi or other service would be cost-prohibitive for this Plaintiff. For these reasons, to the extent that the ALJ's decision here rests on rejecting the logistical problems with Plaintiff's attending in-person examinations, that decision is not supported by substantial evidence.

For all these reasons, the ALJ's decision is not supported by substantial evidence, particularly in light of the finding that the evidence was insufficient (where the ALJ did nothing to address that insufficiency). The failure by the ALJ to satisfy the duty to develop the record as discussed above thus was not harmless to Plaintiff (indeed was prejudicial to Plaintiff) and led directly to the error in the step two analysis.

### CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The Commissioner's final decision is **REVERSED** and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

2. Plaintiff is awarded costs pursuant to Federal Rule of Civil Procedure 54(d)(1).

**IT IS SO ORDERED.**

Dated: March 24, 2026

_____
PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

26